624 S.E.2d 899

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Chesdon James HAUGHT, Defendant Below, Appellant.**

No. 32583.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 4, 2005.

Decided Dec. 1, 2005.

Dissenting and Concurring Opinion of Justice Starcher Dec. 16, 2005.

Edward L. Harman, Jr., Esq., Spilman Thomas & Battle, PLLC, Morgantown, for the Appellant.

K. Kathleen Kern, Esq., Assistant Prosecuting Attorney, Morgantown, for the Appellee.

MAYNARD, Justice:

Appellant, Chesdon James Haught, appeals his March 12, 2004, conviction for domestic battery and kidnapping in the Circuit Court of Monongalia County. Appellant Haught argues that his sentencing under W.Va.Code § 61–2–14a (1999) violated his right to due process and trial by jury under the United States Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), because the trial judge made a finding of fact that enhanced his punishment beyond the maximum amount allowed by the kidnaping statute. After careful consideration of this matter, we affirm Appellant's convictions.

## I.

### FACTS

Appellant, Chesdon James Haught, was convicted of the domestic battery and kidnapping of his girlfriend, Stephanie Hilton. Evidence introduced at trial indicated that after enjoying a late night out with a female friend, Ms. Hilton's car tire went flat. The two women drove a short distance to a nearby friend's house to have Ms. Hilton's tire repaired and spend the evening. After arriving at the friend's home, Ms. Hilton called the American Automobile Association and requested that a tow truck be dispatched to repair her tire.

While Ms. Hilton was waiting for the driver to arrive, Appellant called her cell phone several times to ascertain her location. Although Ms. Hilton refused to divulge her whereabouts, Appellant determined her location from background noises and drove to see her. After Appellant arrived, he repeatedly asked Ms. Hilton to leave with him. She refused and threatened to call the police when he became more insistent. Appellant left only to return a short time later. He parked his car close to Ms. Hilton's car and left the engine running. At that point, Appellant demanded that Ms. Hilton leave with him, and she refused. While Ms. Hilton was sitting in her car, Appellant took Ms. Hilton's money from inside her vehicle, grabbed her by the arms, picked her up out of the car, and carried her over his shoulder to his car. Ms. Hilton resisted to no avail. Appellant assured Ms. Hilton that he would return her to her friend's house and return her money if she would only ride around the block with him. Ms. Hilton stated at trial that she did not ask for help because she was afraid that Appellant would harm her or anyone who tried to help her.

Shortly after Ms. Hilton left with Appellant, she jumped from the moving vehicle in an attempt to escape. Appellant got out of his car and chased her. When he caught Ms. Hilton, he forced her back into the vehicle with verbal threats and his physical strength. While trying to compel him to stop the car and release her, Ms. Hilton once again tried to escape by kicking, punching, and biting Appellant. At that point, Appellant stopped the car and attempted to strangle Ms. Hilton. In her struggle to escape, Ms. Hilton kicked out the Appellant's windshield.

In a final attempt to flee from Appellant, Ms. Hilton grabbed his steering wheel causing him to drive into a ditch. When Appellant and Ms. Hilton exited the vehicle to push it out of the ditch, she stopped a passing vehicle to get help. As she was explaining her situation to the passing motorist, Appellant took more money from her, and obscenely gestured to her. The driver of the vehicle took her to a local convenient store where she called the police.

Appellant was subsequently indicted on charges of kidnapping, first-degree robbery, and domestic battery. On March 12, 2004, a jury found Appellant guilty of kidnapping and domestic battery. Pursuant to W.Va. Code § 61–2–14a(a),[1] our kidnaping statute, a person found guilty shall receive a sentence of life without the possibility of parole. However, the statute also provides that the jury may, in its discretion, recommend mercy. In the instant case, the jury recommended mercy. Further, according to W.Va. Code § 61–2–14a(a)(3),

> in all cases where the person against whom the offense is committed is returned, or is permitted to return, alive, without bodily harm having been inflicted upon him, but after ransom, money or other thing, or any concession or advantage of any sort has been paid or yielded, the punishment shall be confinement by the division of corrections for a definite terms of years of not less than twenty nor more than fifty.

Finally, W.Va.Code § 61–2–14a(a)(4) provides that,

> in all cases where the person against whom the offense is committed is returned, or is permitted to return, alive, without bodily harm having been inflicted upon him or her, but without ransom, money or other thing, or any concession or advantage of any sort having been paid or yielded, the punishment shall be confinement by the division of corrections for a definite term of years not less than ten nor more than thirty.

The trial judge found that Appellant did not return Ms. Hilton unharmed and thus did not qualify for the sentences provided for in W.Va.Code § 61–2–14a(3) and (4). Therefore, the circuit sentenced Appellant to life with mercy as recommended by the jury. Appellant now appeals.

## II.

### STANDARD OF REVIEW

 We are asked in this case to determine the constitutionality of a statute. Such an issue is a question of law. " 'Where the issue on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a de novo standard of review.' Syllabus point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995)." Syllabus Point 1 of *State v. Paynter*, 206 W.Va. 521, 526 S.E.2d 43 (1999). Accordingly, we will review the question before us *de novo*.

---

1. W.Va.Code § 61–2–14a(a) provides,

Any person who, by force, threat, duress, fraud or enticement take, confine, conceal, or decoy, inveigle or entice away, or transport into or out of this state or within this state, or otherwise kidnap any other person, or hold hostage any other person for the purpose of with the intent of taking, receiving, demanding or extorting from such person, or from any other person or persons, any ransom, money or other thing, or any concession or advantage of any sort, or for the purpose or with the intent of shielding or protecting himself, herself or others from bodily harm or of evading capture or arrest after he or she or they have committed a crime shall be guilty of a felony and, upon conviction, shall be punished by confinement by the division of corrections for life, and, notwithstanding the provisions of article twelve, chapter sixty-two of this code, shall not be eligible for parole: Provided, That the following exceptions shall apply: (1) A jury may, in their discretion, recommend mercy, and if such recommendation is added to their verdict, such person shall be eligible for parole in accordance with the provisions of said article twelve; (2) If such person pleads guilty, the court may, in its discretion, provide that such person shall be eligible for parole in accordance with the provisions of said article twelve, and, if the court so provides, such person shall be eligible for parole in accordance with the provisions of said article twelve in the same manner and with like effect as if such person had been found guilty by the verdict of a jury and the jury had recommended mercy; (3) in all cases where the person against whom the offense is committed is returned, or is permitted to return alive, without bodily harm having been inflicted upon him, but after ransom, money or other thing, or any concession or advantage of any sort has been paid or yielded, the punishment shall be confinement by the division of corrections for a definite term of years not less than twenty nor more than fifty; (4) in all cases where the person against whom the offense is committed is returned, or is permitted to return, alive, without bodily harm having been inflicted upon him or her, but without ransom, money or other thing, or any concession or advantage or any sort having been paid or yielded, the punishment shall be confinement by the division of corrections for a definite term of years not less than ten nor more than thirty.

## III.

### DISCUSSION

As noted above, Appellant challenges the constitutionality of the kidnaping statute, W.Va.Code § 61–2–14a, under the Supreme Court's holding in *Blakely v. Washington, supra.* Specifically, Appellant contends that the statute improperly permits the circuit court, rather than the jury, to make findings of fact that enhance a defendant's sentence.

In *Blakely,* the Supreme Court applied its previous ruling in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *Apprendi* involved a defendant who was charged under New Jersey law with second-degree possession of a firearm for an unlawful purpose, which carried a prison term of 5 to 10 years. After the defendant pleaded guilty, the prosecutor filed a motion to enhance the sentence pursuant to a separate state hate crime statute. The statute allowed the defendant's sentence to be extended if the court found, by a preponderance of the evidence, that " '[t]he defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity.' " *Apprendi,* 530 U.S. at 468–69, 120 S.Ct. at 2351, *quoting* N.J. Stat. Ann. § 2C:44–3(e) (West Supp.1999–2000). The trial court found that the shooting was racially motivated and sentenced the defendant to a 12 year term, which was two years more than the maximum sentence provided in the statute under which the defendant was convicted.

The defendant appealed his conviction arguing that the federal due process clause requires the jury, not the trial judge, to find beyond a reasonable doubt the bias upon which his hate crime sentence was based. A New Jersey appellate court upheld the increased sentence reasoning that the hate crime enhancement was a sentencing factor and not an essential element of the underlying offense. The New Jersey Supreme Court subsequently affirmed the appellate court's decision. The court reasoned that the statute was constitutional because it did not allow "impermissible burden shifting and did not 'create a separate offense calling for a separate penalty.' " *Apprendi,* 530 U.S. at

473, 120 S.Ct. at 2353. The court further explained that the statute was a result of the legislature giving weight to a factor that sentencing courts have used to affect punishment.

The United States Supreme Court reversed the New Jersey Supreme Court's decision. The Supreme Court explained:

Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.... [w]e endorse the statement of the rule ... [that] it is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.

The New Jersey statutory scheme that Apprendi asks us to invalidate allows a jury to convict a defendant of a second-degree offense based on its finding beyond a reasonable doubt that he unlawfully possessed a prohibited weapon; after a subsequent and separate proceeding, it then allows a judge to impose punishment identical to that New Jersey provides for crimes of the first degree...based upon the judge's finding, by a preponderance of the evidence, that the defendant's "purpose" for unlawfully possessing the weapon was "to intimidate" his victim on the basis of a particular characteristic the victim possessed. In light of the constitutional rule explained above, and all of the cases supporting it, this practice cannot stand.

*Apprendi,* 530 U.S. at 490–492, 120 S.Ct. at 2362–2363 (citations and internal quotation marks omitted).

In *Blakely,* the Court explained further its holding in *Apprendi.* The defendant in *Blakely* pled guilty to second-degree kidnapping. Under Washington's sentencing statute, the facts that Blakely admitted qualified him for a standard sentence of 53 months. However, pursuant to the statute, the trial court could increase the defendant's sentence if it found " 'substantial and compelling rea-

sons justifying an exceptional sentence.'" Blakely, 542 U.S. at 299, 124 S.Ct. at 2535, 159 L.Ed.2d 403, quoting Wash.Code § 9.94A.120(2). The statute also provided an illustrative list of various aggravating factors for the court to consider when increasing a sentence. Pursuant to the plea agreement, the state recommended a sentence within the standard range of 49–53 months. However, the court increased Blakely's sentence to 90 months after it found facts supporting deliberate cruelty, a statutorily enumerated ground for departure. The defendant appealed arguing that the sentencing procedure deprived him of his federal constitutional right to have a jury determine beyond a reasonable doubt all facts legally essential to his sentence. The state appellate court affirmed the defendant's sentence based on state precedent. The Washington Supreme Court denied discretionary review of the case.

The United States Supreme Court reversed after finding that the trial court's sentencing of the defendant to more than three years above the 53–month statutory maximum of the standard range for his offense, based on the trial judge's finding that the defendant acted with deliberate cruelty, violated the defendant's Sixth Amendment right to trial by jury. In reaching this decision, the Court reiterated its finding in Apprendi that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. The Court then defined the term "statutory maximum" as used in the Apprendi case, explaining that "[o]ur precedents make clear … that the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 542 U.S. at 303, 124 S.Ct. at 2537 (emphasis in the original). The court added "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." Blakely, 542 U.S. at 303–304, 124 S.Ct. 2531.

In the instant case, Appellant argues that his sentence under W.Va.Code § 61–2–14a

violated his right to a trial by jury because the trial judge made findings of fact that enhanced his punishment. Specifically, says Appellant, the trial judge found that Ms. Hilton suffered bodily injury and used this finding to enhance Appellant's sentence. The State, on the other hand, counters that W.Va.Code § 61–2–14a permits the trial judge to reduce a defendant's sentence after making certain findings, such as occurred in this case, and that such a reduction is not violative of Blakely.

According to Appellant, to consider W.Va. Code § 61–2–14a, a sentence reduction statute, as urged by the State, is to elevate form over substance. This is clearly illustrated, says Appellant, by simply changing the structure of the statute to indicate that a defendant is to receive a sentence of 10 to 30 years for kidnapping unless the trial court finds that (1) the victim was not returned involuntarily, (2) the victim was harmed, and (3) a ransom was paid. Appellant avers that if the statute were constructed in this way, it would clearly be a sentence enhancement statute in violation of Blakely. Yet, this is exactly how the statute operates despite its form. In support of this argument, Appellant points to the fact that the so-called exceptions to a life sentence without the possibility of parole in subsections (3) and (4) of the statute are mandatory if the trial judge finds the presence of the enumerated facts. For example, if the trial judge finds that the victim is permitted to return alive and without bodily harm, but after ransom has been paid, the statute says that "punishment shall be confinement … for a definite term of years not less than twenty nor more than fifty." Also, if the victim is permitted to return alive, without bodily harm, and with no ransom paid, "punishment shall be confinement … for a definite term of years not less than ten nor more than thirty." Thus, Appellant contends, the maximum sentence actually provided in the statute is 10 to 30 years unless the trial judge's findings of fact enhance that sentence. According to Appellant, the enhancement from 10 to 30 years to life with mercy in his case was based on the trial judge's finding that Ms. Hilton was not returned unharmed. Appellant concludes that

such an enhancement based on a judicial finding clearly violates *Blakely*.

After careful consideration of this issue, we reject Appellant's argument. This Court believes that *Blakely* is clearly distinguishable from the instant case. *Blakely* stands for the principle that any fact, other than a prior conviction, that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. In *Blakely*, the facts admitted by Blakely qualified him for a standard sentence of 53 months. This sentence, however, was impermissibly *enhanced* to 90 months after the trial judge made additional findings of fact. In contrast, the statutory maximum in this case, or, in other words, the maximum sentence that Appellant could receive based on the jury's findings, was life with mercy which is the sentence Appellant received. Thus, Appellant received no greater sentence than the statutory maximum. In sum, it is clear to this Court that, pursuant to the statute, any additional findings of fact made by the trial judge can only operate under the statute to *reduce* and not *enhance* a defendant's sentence.

This Court has held,

[i]n considering the constitutionality of a legislative enactment, courts must exercise due restrain, in recognition of the principle of the separation of powers in government among the judicial, legislative and executive branches. Every reasonable construction must be resorted to by the courts in order to sustain constitutionality, and any reasonable doubt must be resolved in favor of the constitutionality of the legislative enactment in question. Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary. In considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond a reasonable doubt.

Syllabus Point 1, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W.Va. 740, 143 S.E.2d 351 (1965). We believe it is perfectly reasonable to construe W.Va.Code § 61–2–14a as a statute that provides for the possible reduction of a defendant's sentence based on any additional findings by the trial judge and not one that permits the enhancement of a defendant's sentence. In fact, if trial judges were not constitutionally permitted to reduce sentences as provided for in W.Va.Code § 61–2–14a, they would be precluded from ever granting probation in criminal cases. Prior to granting probation, trial judges are required to make factual findings just as they are permitted to do under the statute at issue. Therefore, we hold that our kidnaping statute, W.Va.Code § 61–2–14a (1999), does not provide for the enhancement of a defendant's sentence beyond the statutory maximum based on additional facts found by the trial judge in violation of the constitutional right to a trial by jury as interpreted by the United States Supreme Court in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Accordingly, finding no constitutional error in Appellant's sentence, we affirm.

## IV

### CONCLUSION

For the reasons set forth above, we affirm Appellant's March 12, 2004, conviction for kidnaping and domestic battery.

Affirmed.

Justice STARCHER dissents and reserves the right to file a dissenting opinion.

STARCHER, J. dissenting, in part, and concurring, in part.

(Filed Dec. 16, 2005)

I dissent from the legal holdings in the majority opinion, because they are contrary to the 6th Amendment of the *United States Constitution*, as articulated by the United States Supreme Court.

The majority opinion in the instant case could be invalidated by a federal court. West Virginia prosecutors and circuit judges who do not ensure that *all* sentence-related findings are made *by a jury*, including those relevant to kidnaping sentences, are "asking for" the reversal of those sentences, and possibly their underlying convictions. Defense counsel who do not object to judge-made findings relating to sentencing are cre-

ating good grounds for an ineffective assistance claim.

I concur in upholding the defendant's sentence in the instant case, however, because he did not properly preserve the issues raised on appeal.

Defendant Haught was convicted of kidnaping, for which he was sentenced to life with mercy, and convicted of domestic battery, for which he received a one-year sentence to run concurrently. The "life with mercy" sentence means that Haught will be eligible for parole consistent with the provisions of *W.Va.Code,* 62–12–1, *et seq.*

*W.Va.Code,* 61–2–14a(a) [1999] provides that in a conviction for kidnaping, if the victim has been "returned, or is permitted to return, alive, without bodily harm having been inflicted upon him or her, . . . the punishment shall be confinement by the division of corrections for a definite term of years not less than ten nor more than thirty."

In the instant case, the trial judge found that this statutory clause did not apply to Haught and imposed a higher sentence, because the victim did have "bodily harm" done to her. The specific question of whether or not the victim suffered "bodily harm" during the kidnaping was not put to the jury; the judge made this finding of fact on his own.

The United States Supreme Court's decision in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) would suggest that a *jury* must make the finding that bodily harm was inflicted on the victim; otherwise the statutory sentencing scheme is a violation of *Blakely.* Haught argues that *W.Va.Code,* 61–2–14a(a) violates the 6th Amendment and *Blakely* because the statute requires the trial judge to make certain findings of fact if the jury returns a guilty verdict with a recommendation of mercy.

Actually, contrary to Haught's argument, the statute does not require that the trial judge make these findings. Instead, the statute is silent and does not specify who should make the findings.

In *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the U.S. Supreme Court ruled that, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In *Blakely, supra,* the Supreme Court clarified its holding in *Apprendi,* with regard to the meaning of "statutory maximum." In *Blakely* the Court said "Our precedents make clear, however, that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" 542 U.S. at 303, 124 S.Ct. 2531.

Our Court should, in accordance with *Blakely,* have clarified that *W.Va.Code,* 61–2–14a(a) does not violate a defendant's 6th Amendment jury trial rights so long as a *jury* finds the facts necessary for determining the sentence, not a judge (unless this right is knowingly waived by the defendant).

Current West Virginia law is out of step with the holdings of *Apprendi* and *Blakely.* In Syllabus Point 1 of *State v. Farmer,* 193 W.Va. 84, 454 S.E.2d 378 (1994) our Court explicitly permitted a judge to make findings of fact for sentencing purposes in kidnaping cases:

> Pursuant to West Virginia's kidnapping statute set forth in W.Va.Code § 61–2–14a [1965], *a trial judge, for purposes of imposing a sentence on a defendant . . . has the discretion to make findings* as to whether a defendant inflicted bodily harm on a victim and as to whether ransom, money or any other concession has been paid or yielded for the return of the victim . . . .

*Blakely* and *Apprendi* directly prohibit this type of fact finding by a judge. *Farmer* must be overruled.

Was there an enhancement beyond the statutory maximum sentence in the instant case? *Blakely* and *Apprendi* speak to the ability of a judge to use factual findings to *enhance* a defendant's sentence, and do not speak to a judge's use of mitigating factors to *decrease* a defendant's sentence. The rule of *Apprendi* and *Blakely* may be most easily understood in the following way: "the practical impact of [*Blakely* ] is that any fact found or taken into account by a judge which increases a sentence beyond that which could have been determined solely on the jury

verdict must have been presented to and found by a jury or admitted by the defendant." *U.S. v. Gilvuardo–Parra,* 340 F.Supp.2d 1243, 1245 (D.Utah 2004).

The wording of *W.Va.Code,* 61–2–14a(a) makes it difficult to apply the language in *Blakely* and *Apprendi.* Rather than starting with a minimum sentence, and then outlining the findings of fact that can be used to enhance that sentence, the language of *W.Va. Code,* 61–2–14a(a) begins with the maximum sentence and then describes the findings of fact that can be used to reduce the sentence. *W.Va.Code,* 61–2–14a(a) speaks in terms of reductions rather then enhancements, the result is the same; it is only the process that is different.

Thus, as long as a *jury* makes the findings necessary for a court to sentence a defendant under *W.Va.Code,* 61–2–14a(a), then the statute does not violate a defendant's 6th Amendment rights. But if a finding of fact, made for the purpose of sentencing under *W.Va.Code,* 61–2–14a(a), is found by a judge and not by a jury, then the defendant's 6th Amendment rights are violated.

In the instant case, the trial judge found that Haught had inflicted "bodily harm" on the victim, and thus that Haught was not eligible for the reduced definite sentence of ten to thirty years; instead he was sentenced to life with mercy.

Should Haught's conviction be reversed and a new trial granted? I am satisfied that this sentence was imposed in violation of 6th Amendment rights and *Blakely.* However, neither Haught nor his counsel objected to the judge's instructions to the jury. The instructions did not ask the jury to make a determination of whether or not "bodily harm" had occurred to the victim—this was reserved for and made by the judge following the verdict. In fact, counsel for the defendant actually relied on *Farmer* for the proposition that the jury did not need to make such a factual finding.

Finally, federal courts around the country, including those in West Virginia, have held that *Blakely* is *not* retroactive to cases on collateral appeal. *See Simpson v. U.S.,* 2005 WL 1076534 (N.D.W.Va., 2005). The sentencing hearing in the instant case occurred on May 17, 2004, and *Blakely* was decided on June 24, 2004. The rule in *Blakely,* therefore, does not extend to the instant case. The defendant is not entitled to a new trial.

Based on the foregoing, I concur, in part, and dissent, in part.